```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA

MARK R. MALOUSE                              CIVIL ACTION

VERSUS                                       NO: 07-3590

DONALD C. WINTER                             SECTION: "A" (2)
```

## ORDER AND REASONS

Before the Court are cross **Motions for Summary Judgment (Rec. Docs. 10 & 20)** filed by plaintiff Mark R. Malouse (#20) and defendant Donald C. Winter, in his capacity as Secretary of the Navy (#10). Both motions are opposed. The motions, set for hearing on April 2, 2008, are before the Court on the briefs without oral argument. For the reasons that follow, Plaintiff's motion is DENIED and Defendant's motion is GRANTED.

## I. BACKGROUND

Mark R. Malouse ("Plaintiff") filed suit in this Court following an unfavorable result before the Merit Systems Protection Board ("MSPB"). Plaintiff had been employed at the Naval Branch Health Clinic in Gulfport, Mississippi as a civilian supervisory pharmacist until he was removed from federal service effective January 20, 2006. (Rec. Doc. 10, Exh. 1B). The ALJ concluded that the agency had supported four charges of failure to follow a standard operating procedure, medical practice, or work instruction and several incidents of conduct unbecoming a supervisor. (Id.). In conjunction with his MSPB appeal

Plaintiff also raised claims of discrimination based on religion, race, gender, reprisal for engagement in prior EEO activities, reprisal for whistleblowing, and violations of USERRA.[1]  The ALJ rejected all of these claims as being wholly unsupported by any evidence.  (Id.).  Plaintiff filed a petition to have the entire board review the ALJ's decision.  The MSPB upheld the ALJ's decision in its entirety. (Id.).  Plaintiff then filed the instant suit seeking review of the MSPB's decision on the removal as well as redress for the alleged unlawful discrimination.  The parties have filed cross motions for summary judgment on all issues presented in the case.

**II.   DISCUSSION**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact."  TIG Ins. Co. v. Sedgwick James, 276 F.3d 754, 759 (5th Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

---

[1] Uniform Services Employment and Reemployment Rights Act

2

Id. (citing Anderson, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. Id. (citing Anderson, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. Id. (citing Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

The MSPB is an independent, quasi-judicial federal agency that is responsible for adjudicating appeals by federal employees from adverse personnel actions. Gilbreath v. Guadalupe Hosp. Found., Inc., 5 F.3d 785, 787 (5th Cir. 1992) (citing 5 U.S.C. § 1204(a), 7513(d), & 7701). Mixed case appeals are those in which the case contains an appeal of an adverse personnel action as well as claims of discrimination. Blake v. Dep't of Air Force, 794 F.2d 170, 173 n.1 (5th Cir. 1986) (citing Williams v. Dep't of Army, 715 F.2d 1485 n.3 (Fed. Cir. 1983)). Although the Court of Appeals for the Federal Circuit has exclusive jurisdiction of

3

MSPB appeals, mixed cases must be filed in the federal district courts.  Id.  Federal employees who bring their discrimination claims before the MSPB in conjunction with an appeal are not required to separately exhaust their discrimination claims with the EEOC.  Sloan v. West, 8 F. Supp. 2d 1207, 1211 (D. Haw. 1996).  In a mixed case the district court reviews the MSPB decision for abuse of discretion and the discrimination claims are considered de novo.  Aldrup v. Caldera, 274 F.3d 282 (5th Cir. 2001).

   **A.   MSPB Appeal**

This Court's review of MSPB decisions is limited.  The Court will uphold non-discrimination claims presented to the MSPB unless they are clearly arbitrary and capricious, unsupported by substantial evidence, or otherwise not in accordance with law.  Williams v. Wynne, 533 F,3d 360, 373 (5th Cir. 2008) (citing Aldrup, 274 F.3d at 287).

The notice of proposed removal is dated August 2, 2005.  (Rec. Doc. 10, Exh. 1A).  The notice was prepared by Commander Un-Kyong Suvie Archer, the Senior Nurse of the clinic facility and Plaintiff's immediate supervisor.  In that notice Plaintiff was advised that he was being potentially removed based on a charge of failure to follow a standard operating procedure,

4

medical practice, and/or work instruction (four instances)[2] and a charge of conduct unbecoming a supervisor.  (Id.).

The first instance of failure to follow pertained to two prescriptions that had been short-filled on the quantity ordered by the physician.  Commander Archer advised that such an error demonstrated that Plaintiff was continuing to ignore the double-check SOP[3] and that Plaintiff was continuing to ignore her instruction to check the pharmacy counting/dispensing machine.  (Rec. Doc. 10, Exh. 1A).

The second instance of failure to follow pertained to Plaintiff's failure to properly verify a patient's identity in accordance with procedure prior to dispensing medication.  (Id.).  Although the proper patient did receive the proper prescription Plaintiff failed to properly check the social security numbers as per procedure.

The third instance of failure to follow pertained to an order of narcotics for the pharmacy.  Plaintiff ordered the narcotics and then received them from the vendor.  Procedures at the pharmacy required that the person ordering narcotics not

---

[2] The notice of proposed removal actually contains five instances of failure to follow.  The fifth instance was dropped by LCDR Grimes, the OIC (officer in charge) who made the final removal decision.  (Rec. Doc. 10, Exh. 1B).  The fifth instance involved a prescription issued to LCDR Grimes's wife.

[3] Standard Operating Procedure

directly receive them from the vendor.  (Id.).

The fourth instance of failure to follow pertained to Plaintiff's decision to change the prescribing physician's name on certain medications after an existing provider transferred to another facility.  Plaintiff was informed that such action was a serious breach of medical ethics and standard medical practices. (Rec. Doc. 10, Exh. 1A).

The second charge was for conduct unbecoming a supervisor. The notice contains several "situations" including Plaintiff's failure to adequately prepare a pharmacy training program, attempting to pass work off to another staff memeber, failing to ensure that hurricane preparations were complete before evacuating, and scheduling military leave on a date that forced required training to be cancelled.

In addition to the new charges cited above, the notice discussed prior instances of misconduct and disciplinary actions that CDR Archer believed relevant to the proposed removal.  (Rec. Doc. 10, Exh. 1A).  The record contains a seven day suspension without pay in October 2004 based on Plaintiff's failure to prepare a pharmacy SOP manual as directed by his supervisors. Additionally, Plaintiff scheduled a meeting with his chain of command and then failed to show due to a late lunch appointment. (Rec. Doc. 10, Exh. 1A).  There is also an allegation that

6

Plaintiff, as well as several other employees, failed to fill out a 3 X 5 card with the clinic's mission statement.

The record also contains a letter of reprimand dated October 29, 2004, arising out of Plaintiff's failure to properly reprimand a pharmacy technician under his supervision.  (Rec. Doc. 10, Exh. 1A).

Plaintiff submitted a detailed and prolix reply to the notice of removal.  (Rec. Doc. 10, Exh. 1A).  On January 12, 2006, LCDR Grimes, the officer in charge of the clinic, authorized the removal.  (Id.).  Plaintiff appealed the decision to the MSPB and in that appeal he raised several affirmative defenses.  On November 30, 2006, Plaintiff, who was represented by counsel, proceeded to a hearing before an MSPB ALJ.  (Rec. Doc. 20, Exh. 16).  The ALJ issued a written decision upholding the removal on all charges.  (Rec. Doc. 10, Exh. 1B).  The ALJ concluded that the agency had supported the charges against Plaintiff by preponderant evidence.  (Rec. Doc. 10, Exh. 1B). The ALJ also concluded that Plaintiff had failed to establish any of his affirmative defenses and that the removal was reasonable based on the sustained conduct.  (Id.).

Regarding the charge of failure to follow, the ALJ found that the agency had sustained the first instance pertaining to the short-filled prescriptions.  There was no question that the

incident had occurred and the ALJ was not impressed with Plaintiff's contention that the error was simply de minimus. (Rec. Doc. 10, Exh. 1B, at 3).  Likewise, regarding the second instance, the ALJ recognized that the identification error in patients had in fact occurred.  The ALJ was not impressed with Plaintiff's contention that the mistake was insignificant given that the right patient ultimately got the right drug.

Regarding the third instance of failure to follow pertaining to the receipt of narcotics, the ALJ rejected Plaintiff's arguments as "blatantly frivolous."  (Rec. Doc. 10, Exh. 1B, at 4).  Plaintiff had argued that the supply clerk who ultimately processed the request was in fact the person who "ordered" the drugs.  Finally, as with the other instances of failure to follow, the ALJ noted that the fourth instance had undisputedly occurred and that Plaintiff had in fact changed the name of the prescribing physician on certain prescription refills without consulting the doctors involved.  (Id.).  The ALJ was of the opinion that such conduct was clearly a breach of medical ethics.

The ALJ also found that all of the conduct comprising the conduct unbecoming charge had been sustained.  The ALJ concluded that the testimony presented at the hearing and evidence of record supported Plaintiff's supervisors' contention that he had failed to timely submit an acceptable training program.  (Rec.

8

Doc. 10, Exh. 1B, at 5). Regarding the attempt to pass off work to another staff member, the ALJ found the charge sustained although not very serious in nature. (Id.).

The ALJ found Plaintiff's response to the charge surrounding the hurricane evacuation to be "somewhat cavalier." (Id.). The ALJ found that Plaintiff had in fact left without notice after assigning his duties to pack needed medications to a pharmacy technician. Plaintiff had contended that unlike military personnel he was not on duty 24/7 and that civilian employees had been released to leave. The ALJ concluded that Plaintiff's conduct was a breach of his supervisory obligations. (Rec. Doc. 10, Exh. 1B, at 6).

Finally, the ALJ found that the agency had established that Plaintiff had failed to comply with a directive from his supervisor to conduct certain training in July 2005. According to the charge Plaintiff scheduled the training on July 29th and then asked to take military leave during that same time thereby causing the training to be cancelled. Plaintiff had argued that this charge violated USERRA but the ALJ explained that Plaintiff was being charged with not carrying out the training instruction as opposed to taking military leave. (Id.).

The ALJ also rejected all of Plaintiff's affirmative defenses, which comprise his discrimination claims in this

9

lawsuit, and which are discussed in greater detail below.  The ALJ was of the opinion that Plaintiff's affirmative defenses were nothing more than empty accusations wholly unsupported by any evidence.  (Rec. Doc. 10, Exh. 1B, at 7).  The ALJ found some of the claims to be "totally frivolous" and others to be simply meritless.  (Id. at 8-9).  In concluding his analysis the ALJ found that the agency had considered and appropriately applied all of the factors required by law.  (Id. at 10 (citing Douglas v. Vets. Admin., 5 M.S.P.R. 280, 306 (1981)).

   Plaintiff's first assignment of error is that the ALJ improperly denied his motion for certain additional witnesses, the first of whom was William J. Allen.  Allen administered a polygraph to Plaintiff, at his counsel's request, during which Plaintiff stated that he had prepared an SOP manual as instructed and that he subjectively believed that he was being discriminated against due to his religious beliefs.  (Rec. Doc. 20, Exh. M).  Even though the SOP related to prior disciplinary proceedings, Plaintiff contends that the agency's and the ALJ's partial reliance on prior disciplinary issues to support the removal in effect opened the door.

   Plaintiff contends that Jim Garner, the Employee Support of the Guard and Reserve Ombudsman, should have been allowed to testify that certain agency requirements violated USERRA.

Plaintiff contends that Garner could have served as an expert in the requirements of USERRA. Finally, Plaintiff contends that "Mr. Odom," a pharmacist, should have been allowed to testify as to *inter alia* the seriousness of some of errors that Plaintiff committed in the pharmacy.

The Court finds no error in the ALJ's decision to exclude these witnesses. Allen's testimony regarding Plaintiff's *subjective* belief that he completed the SOP assignment and was subjected to discrimination is not relevant. Likewise, Garner's testimony regarding the legal requirements of USERRA was properly excluded. The ALJ was certainly capable of determining the legal standards applicable to Plaintiff's claim. Finally, the ALJ committed no error in excluding Odom's testimony which was directed at trying to convince the judge that Malouse's errors were de minimus in the pharmacy profession. Testimony offered to convince the ALJ that errors such as short-filling prescriptions and altering the names of prescribers were not serious would have been futile.

Plaintiff's second assignment of error is that the charges against him were simply not proven. Ever mindful that this Court is not conducting a de novo review of the proceedings below, the Court has reviewed the entirety of the parties' submissions and the Court is not persuaded that the ALJ erred in finding that the

11

agency had proven the charges.  The Court will not step through the plethora of charges individually but most of Plaintiff's arguments in this area pertain to his contention that the errors committed were simply mistakes or that they were just not serious in nature or that they were attributable to other employees.  The ALJ explained in detail why he rejected all of those contentions and this Court can find nothing erroneous about his conclusions.  Moreover, the agency was never required to prove that Plaintiff's conduct was motivated by ill will.

Plaintiff's next assignment of error is that removal was an unreasonable penalty because the agency did not weigh the relevant factors as outlined in Douglas v. Veterans Administration, 5 M.S.P.R. 280, 306 (1981).  The ALJ dedicated three pages of his opinion to this issue and concluded that the agency did consider the Douglas factors.  (Rec. Doc. 10, Exh. 1B at 10-12).  In the notice of removal Grimes hit on all of the factors relevant to this case.  The ALJ also explained why the decision to remove Plaintiff was consistent with the requirements of Douglas.  (Id.).  This assignment of error is without merit.

Plaintiff's final assignment of error, pretermitting consideration of his affirmative defense discrimination claims, is that the ALJ violated his right to discovery.  In particular Plaintiff complains about a Division Officer Notebook that he

wanted in discovery and the transcript of an EEO hearing held on June 14, 2006.  Plaintiff contends that these records probably contained information that would demonstrate that there was an invidious conspiracy against him and that his superiors were trying to "sacrifice him upon the altar of secularism."  (Rec. Doc. 20, at 41).  The ALJ possesses broad discretion when ruling on discovery matters in MSPB proceedings.  Key v. Gen. Servs. Admin., 60 M.S.P.R. 66, 68 (Dec. 7, 1993) (citing 5 C.F.R. § 1201.41(b)(4)).  Further, the discovery that Plaintiff seeks pertains to the discrimination claims that are being brought de novo in this Court where discovery is available.  As noted below, nothing presented to this Court even remotely suggests that Plaintiff's removal was prompted by unlawful discrimination.  The Court is not persuaded that the ALJ abused his discretion by denying the discovery sought.

In sum, Plaintiff has not demonstrated that the ALJ's decision, as affirmed by the MSPB, is arbitrary and capricious, unsupported by substantial evidence, or otherwise not in accordance with law.

 **B. *Discrimination Claims***

  **i. <u>Retaliation/whistleblowing</u>**

In a mixed case appeal from the MSPB the Court considers discrimination claims on a de novo basis.  Aldrup v. Caldera, 274

F.3d 282, 285-86 (5th Cir. 2001) (citing 5 U.S.C. § 7703(c)). The Court applies the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), evidentiary framework from Title VII cases to claims of retaliation and discrimination.[4]  Id. at 286.  In order to establish a prima facie case of retaliation, the plaintiff must prove that: 1) he engaged in activity protected by Title VII, 2) an adverse employment action occurred, and 3) that there was a causal connection between the protected activity and the adverse employment action.  Id. (citing Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir. 1996)).  Assuming the plaintiff is able to establish his prima facie case, the burden then shifts to the defendant to demonstrate a legitimate nondiscriminatory purpose for the employment action.  Id. (citing Tex. Dep't of Commun. Affairs v. Burdine, 450 U.S. 248, 254 (1981)).  If the defendant makes the required showing, the burden returns to the plaintiff to demonstrate that the employer's articulated reason for employment action was a pretext for the real discriminatory reason.  Id. (citing McDonnell Douglas Corp., 411 U.S. at 804).

Plaintiff was removed from service and prior to removal he

---

[4] The McDonnell Douglas framework applies when the plaintiff seeks to prove causation via circumstantial evidence of discrimination as opposed to direct evidence.  Fierros v. Tex. Dep't of Health, 274 F.3d 187, 191 (5th Cir. 2001).  Plaintiff has no direct evidence of discrimination so the McDonnell Douglas framework is applicable here.

14

had filed a litany of EEO complaints, most of which were dismissed and none of which led to a finding of discrimination. Plaintiff undisputedly satisfies the first two elements of a prima facie case for retaliation because he engaged in protected activity and he suffered an adverse employment action.

However, to complete his prima facie case Plaintiff must demonstrate a causal connection between his prior EEO complaints and his removal from service.  Archer, who had been one target of the EEO complaints, proposed Plaintiff's removal.  While Grimes actually authorized the removal Archer outranked Grimes.  Archer knew about the prior EEO complaints.  Plaintiff testified before the ALJ that he heard Archer say as she stormed down the hall that she would "fix him" although he wasn't positive that those exact words were used.  (Rec. Doc. 20, Exh. 18, at 262-63). Without concluding that Plaintiff's evidence is legally sufficient to establish a prima facie case as to causation, the Court will assume that Plaintiff has met this burden.

Nonetheless, the agency has demonstrated a legitimate nondiscriminatory reason for removing Plaintiff in the two charges supporting removal and Plaintiff's prior disciplinary record.  Plaintiff has offered no evidence whatsoever to suggest that the agency's action was a pre-text for retaliation.  As explained above, Plaintiff's arguments as to the charges center

15

on his contention that his errors simply were not significant or were simply attributable to human error.  The agency is entitled to summary judgment on this claim.

Further, nothing in the record supports Plaintiff's contention that he was removed in reprisal for whistleblowing.  Plaintiff's whistleblowing pertains to reports that he made about a pharmacy technician dispensing medication.  In light of the legitimate reasons for Plaintiff's removal he has failed to demonstrate that reprisal for whistleblowing played any part in the decision to remove him.  The agency is entitled to summary judgment on this claim.

### ii.  Race/Gender/Religious Discrimination

The same McDonnell Douglas burden shifting framework applies to claims of race, gender, and religious discrimination.  See McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).  To establish a prima facie case of race or gender discrimination under Title VII the plaintiff must show that he 1) is a member of a protected group, 2) was qualified for the position at issue, 3) was discharged or suffered some adverse employment action by the employer, and 4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

Plaintiff is white, male, and Catholic.  Throughout his

memoranda filed with this Court, and in the proceedings before the MSPB, Plaintiff has argued repeatedly that this entire case is about Commander Archer's goal, as an Oriental female, to discriminate against a white male Catholic.  Of course, LCDR Grimes, the OIC who authorized the removal, is a male and he is also Catholic.  (Rec. Doc. 20, Exh. 16 at 148).  Further, Commander Baker, the former OIC who authorized at least one of the prior suspensions, was a black male.  The record is completely void of any evidence to suggest that Plaintiff was discriminated against on the basis of gender or race and Plaintiff does not even present a prima facie case as to these claims.

Plaintiff's claims of religious discrimination pertain to his objection to dispensing any drugs for emergency contraception known as "Plan B" contraceptive drugs.  Plaintiff testified before the ALJ that his problems with Commander Archer began when he refused to include a section in the pharmacy SOP manual for dispensing Plan B drugs.  (Rec. Doc. 20 Exh. 18 at 250-51).

As with Plaintiff's other claims of discrimination Plaintiff has no evidentiary support to impugn the agency's legitimate non-discriminatory reason for removing him from service.  The agency is entitled to summary judgment on this claim.

       **iii. USERRA Claims**

17

The purpose of the Uniform Services Employment and Reemployment Rights Act ("USERRA") is *inter alia* to prohibit discrimination against persons because of their service in the uniformed services.  <u>Rogers v. City of San Antonio</u>, 392 F.3d 758, 762 (5th Cir. 2004) (quoting 38 U.S.C. § 4301).  USERRA's anti-discrimination provision prohibits an employer from denying initial employment, reemployment, retention in employment, promotion, or any benefit of employment to a person on the basis of membership, performance of service, or obligation of service.  <u>Id.</u> (citing 38 U.S.C. § 4311(a)).  An employer must not retaliate against a person by taking adverse employment action against that person because he or she has taken action to enforce a protection afforded under USERRA.  <u>Id.</u> (citing 38 U.S.C. § 4311(b)).

Although Plaintiff complains that Archer placed additional administrative burdens on him when taking military leave, <u>i.e.</u>, producing documents supporting leave, Plaintiff's only potentially actionable complaint is related to the charge that Plaintiff failed to conduct training by the end of July 2005 as directed by his superiors.  Plaintiff scheduled the training for the end of July and then left for military duty thereby constructively cancelling the training he was expected to conduct.

On this claim the Court agrees with the ALJ's observation

that Plaintiff was not disciplined for taking military leave. Rather, Plaintiff was disciplined for failing to carry out a supervisory direction to conduct pharmacy training before the end of July 2005. The Court finds no violation of USERRA and the agency is entitled to summary judgment on this claim.

### iv. Religious Freedom Restoration Act

The Religious Freedom Restoration Act ("RFRA") prohibits the government from substantially burdening a person's exercise of religion even if the burden results from a rule of general applicability unless the government demonstrates that the burden is in furtherance of a compelling governmental interest, and is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C.A. § 2000bb-1 (West 2003).[5]

Assuming that this statutory scheme provides Plaintiff a cause of action separate and apart from Title VII to redress his removal, a dubious proposition at best, the facts of this case do not support such a claim. As explained above, the record provides an adequate basis to support Plaintiff's removal for reasons having nothing to do with his objection to Plan B

---

[5] In City of Boerne v. Flores, 521 U.S. 507 (1997), the Supreme Court held that the RFRA was unconstitutional because it exceeded Congress's enforcement powers. Both parties have assumed, as will this Court, that the RFRA may nevertheless be applied to the federal government. It is far less clear, however, that Plaintiff could circumvent Title VII to seek redress for discrimination in employment by relying upon RFRA.

contraceptives.  The agency is entitled to summary judgment on this claim.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 20)** filed by plaintiff Mark R. Malouse is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 10)** filed by defendant Donald C. Winter, in his capacity as Secretary of the Navy is **GRANTED**.  Plaintiff's complaint is dismissed.

August 29, 2008

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE